Estate of Mary S. Reeves, Deceased, Eleanor M. Reeves, Executrix v. Commissioner.
Estate of Reeves v. Commissioner
Docket No. 41414.
United States Tax Court
T.C. Memo 1956-69; 1956 Tax Ct. Memo LEXIS 226; 15 T.C.M. (CCH) 323; T.C.M. (RIA) 56069; March 22, 1956
*226 Harry J. Alker, Jr., Esq., [1] and Edward Hall II, Esq., for the petitioner. William G. Handfield, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in estate tax against the estate of the decedent in the amount of $15,492.37. By amendment to his answer, he now claims a deficiency of $20,045.09. The issues for decision are whether the respondent erred (1) in disallowing the claimed deduction of $10,000 as compensation to Louise B. Anderson for services rendered to decedent prior to her death; (2) in determining that the correct deduction for a surcharge against the decedent, arising out of the administration of the estate of her deceased husband, was $21,245.95, and not $25,000, as claimed; (3) in including in the gross estate $916.65, representing prepaid premiums on fire insurance covering properties belonging to decedent on the date of her death, and, in the alternative, *227 in not allowing a deduction to the estate for the amount of the said prepaid premiums; and (4) in reducing miscellaneous administration expenses from $11,000, as claimed, to $1,276.50. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Eleanor M. Reeves is the duly qualified executrix of the estate of her mother, Mary S. Reeves, deceased, letters testamentary having been granted on March 17, 1948, by the Register of Wills at Philadelphia, Pennsylvania. The decedent died on March 12, 1948, a resident of Philadelphia. The estate tax return was filed on April 15, 1949, with the collector of internal revenue for the first district of Pennsylvania. Louise B. Anderson was working for the decedent at the time of decedent's death, and had been so employed for some eight years. Her employment has continued with the decedent's estate. She was first employed by decedent's brother, Harry T. Saunders, and had been so employed for many years. Her salary varied from time to time. At the date of the decedent's death, it was $40 per week; it was thereafter increased first to $50 per week and then to $55 per week. Her duties included those of a bookkeeper, stenographer, *228 and activities having to do with the rental of properties belonging to decedent, as well as other office duties. Horace A. Reeves, decedent's husband, died in 1917, and the decedent and her brother Harry became co-trustees of his estate. The decedent was a beneficiary of her husband's estate. Harry Saunders died in 1940. After his death, the Girard Trust Company became co-trustee with the decedent of the Horace A. Reeves estate. Since the death of the decedent, the Girard Trust Company has been the sole trustee of the Horace A. Reeves estate. In 1945 surcharge proceedings were started in the Orphan's Court of Philadelphia in connection with the handling of the Horace A. Reeves estate by Harry Saunders. Decedent had not been as familiar with the affairs of the estate as Louise Anderson had been, and she requested Louise to work up all possible data for presentation against the surcharge. The matter dragged on indefinitely, and the decedent was afraid Louise would grow tired of working with it and would leave her employ. She became too nervous to testify at the hearing on the surcharge matter, and placed reliance on Louise as her witness. At or about the time of the hearing, she *229 had her attorney advise Louise that she was going to pay her $10,000 as compensation for the services she was rendering in connection with the surcharge matter, and provided Louise would continue in her employment. The surcharge matter had not been concluded when the decedent died. Eleanor, as executrix and sole beneficiary of the decedent's estate, agreed that the above amount was due and owing by the estate to Louise. At first, it was her plan to make partial payment with some shares of stock of the estate, expecting to pay the balance in cash at a later date, and some shares of stock belonging to the estate were transferred to Louise as such partial payment. Eleanor was advised by counsel, however, that some question might be raised as to the value of the stock in connection with the estate tax and, for that reason, it was desirable that the stock be not so used. The shares of stock were recalled and on October 7, 1949, Eleanor gave Louise a check in the amount of $4,258.34, which approximated the amount she had regarded the stock as paying. On October 28, 1953, she gave Louise a second check for $5,741.66, to cover the balance of the compensation. Eleanor drew the checks on her *230 personal account, as she desired to maintain the cash in the estate account for the payment of inheritance taxes and administration expenses. The surcharge proceeding was closed by the entry in the Orphan's Court of a surcharge against the decedent in the amount of $21,245.95. For services rendered in connection with the surcharge matter, the decedent's counsel was paid $250. A payment of $200 was also made for auditing services. At the date of her death, the decedent owned fifteen parcels of real estate, which were reported in the estate tax return at a value of $284,600. Most, if not all, of these properties were rental properties, and at the time of her death, the decedent carried one-year term fire insurance policies on the properties. The prepaid premiums at the date of decedent's death amouned to $916.65. The existence of the prepaid insurance in that amount was shown on the estate tax return, but was not included in the decedent's gross estate. The policies expired within the year following the decedent's death. The respondent included the $916.65 in the decedent's gross estate, but allowed no deduction therefor in his determination of the deficiency herein. In the estate *231 tax return, a lump sum of $11,000 was claimed in the schedule covering funeral and administration expenses, under the description "Misc. Exp." The respondent in his determination of deficiency disallowed all of the deduction except $1,276.50. One of the items making up the $11,000 deduction was $2,600. This amount represented compensation paid to Louise Anderson for one year's services rendered to the estate. Of that amount, $1,300 represented services rendered in connection with the administration of the estate. Opinion With respect to the deduction of $10,000 claimed as covering compensation for services rendered by Louise Anderson to the decedent during her lifetime, we are satisfied from the evidence that the services as claimed were rendered by Louise to the decedent, that $10,000 was reasonable compensation for the services which were so rendered, and that they were rendered with the understanding that the decedent would pay the said $10,000 to Louise for those services. We have so found. The respondent was in error in disallowing the deduction so claimed. With respect to the surcharge, a deduction of $25,000 was claimed. The respondent has allowed $21,245.95, which was *232 the amount of the surcharge against the decedent, pursuant to the decision of the Orphan's Court. It is contended on behalf of the petitioner that there were other costs, which would bring the total amount to the $25,000 deduction claimed. The facts show, in addition to the amount of the surcharge itself, that there was an expense of $250 for counsel fees and an auditing expense of $200. Such being the facts, the deduction allowed by the respondent is accordingly increased by $450. That prepaid insurance premiums at the date of the decedent's death in the amount of $916.65 represented an asset and should have been included in the gross estate, is in our opinion elementary, and requires no discussion. The respondent's inclusion of that amount in the decedent's gross estate is accordingly sustained, and the question is as to the petitioner's alternative claim of deduction of the amount in question as an administration expense. The facts show that the insurance in question was fire insurance covering properties held by the decedent for the production of income in the form of rents and being originally for a one-year term, expired within the year after the decedent's death. The proof *233 goes no further. We are accordingly unable to say that the prepaid insurance premiums so consumed during the period under which the estate has been in administration was an administration expense and not a cost of earning income subsequent to the date of death. In such circumstances, the respondent's refusal to allow the deduction contended for is sustained. See ; ; and . The remaining question has to do with the respondent's disallowance of amounts claimed as miscellaneous administration expenses. $11,000 was claimed on the estate tax return as the amount of such expenses, of which the respondent in his determination of deficiency allowed only $1,276.50. Some of the items included in the $11,000 claimed have been waived by the petitioner, particularly an item of $8,538, alleged in the petition to have been expended as commissions on the sale of real estate. In addition to the $1,276.50 allowed by the respondent, the petitioner has shown that $2,600 has been paid during the period of administration to Louise Anderson for services rendered the *234 estate. The facts show that some substantial portion of these services were related to the management of income-producing real estate and for the reasons heretofore stated with respect to the prepaid insurance premiums, the record does not justify the conclusion that the entire $2,600 so paid to Louise represents administration expenses. Applying the principle in , it is our conclusion, on the record, that $1,300 of the $2,600 paid for Louise's services represents compensation for that portion of her services which were rendered in connection with the administration of the estate, and we have so found. There is no adequate proof with respect to any other items of expense. On the estate tax return, a deduction of $21,510.98 was claimed as commissions agreed upon to the executrix. Of the deduction so claimed, the respondent in his determination of deficiency allowed $13,007.77. Orally at the trial and by written stipulation subsequently filed, the deduction of the entire $21,510.98 claimed on the estate tax return has been waived by petitioner. In addition to the waiver of the deduction of executrix's commissions, the petitioner *235 has likewise waived other items in respect of which error on the part of the respondent had been alleged. Effect will be given in computations under Rule 50 to the said waivers. Decision will be entered under Rule 50. Footnotes
1. Edward Hall II appeared for limited purpose during trial and after briefs had been filed, Harry J. Alker, Jr., withdrew as counsel in the proceeding, and Joseph W. Price, 3rd, was substituted as counsel of record.↩